**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Erica Alvarado,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Northwest Fire District,<br><br>　　　　Defendant. | No. CIV 19-198-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (Doc. 57) filed by Defendant Northwest Fire District (the "District"). Plaintiff Erica Alvarado ("Alvarado") has filed a response (Doc. 65); the District has filed a reply (Doc. 67). Because the parties have thoroughly presented the facts and briefed the issues, the Court declines to set this matter for oral argument. *See* LRCiv 7.2(f); 27A Fed.Proc., L. Ed. § 62:361 (March 2021) ("A district court generally is not required to hold a hearing or oral argument before ruling on a motion."); 27A Fed. Proc., L. Ed. § 62:671 (March 2021) (a hearing on a summary judgment is not required by due process considerations).

I. *Factual and Procedural Background*

The District hired Alvarado as a Fire Inspector Recruit on May 18, 2015. Alvarado's Performance Appraisal for 2015 rated her at "Meets Expectations" in every category.

Alvarado became pregnant in 2015. On September 30, 2015, Debbie Metzger ("Metzger"), a Human Resource Specialist, sent an email to Human Resource Services

1. Director for Northwest Fire District Patricia Aguilar ("Aguilar") regarding Alvarado's application for medical and Family and Medical Leave Act ("FMLA") leave for the birth of her child. Aguilar responded that Chief Donald Garcia ("Garcia") would extend Alvarado's probation by the length of time Alvarado was out. This statement was made approximately six months before Alvarado went on leave, i.e., before it was known what, if any, training, Alvarado missed. Aguilar testified during her deposition that the District policy regarding an extension of probation by the time an employee is on leave "depends on how long [an employee is] out." Aguilar Dep., p.15:22-16:2 (Plaintiff's Statement of Facts ("PSOF"), Ex. 1, Doc. 66-1). An employee's probationary period is extended by the length of time an employee is on leave if the leave is longer than a week or two. *Id*. at 15:5 – 16:21. Ultimately it was "up to the manager or supervisor depending on the employee's performance." *Id*. at p. 16:6-16. Garcia testified that he was not asked until May of 2016 regarding Alvarado's leave and, at that time, he recommended Alvarado's probation be extended to make up some training. Garcia Dep., p. 29:21-30:7 (PSOF, Ex. 2, Doc. 66-2).

Alvarado began her maternity leave after giving birth on March 30, 2016, two months short of the end of her one-year probationary period. Alvarado took additional leave under the Family and Medical Leave Act ("FMLA") once she was employed for one year, which extended her leave through June 5, 2016. Alvarado returned to work on June 6, 2016. Lisa Douglas ("Douglas") became Alvarado's supervisor upon her return from maternity leave. Upon returning from maternity leave, Alvarado was criticized by Douglas for being late when she was on time and Alvarado was subjected to increased scrutiny and criticism of her work. At one point, Douglas suggested Alvarado downsize her vehicle to be able to afford day care.

Alvarado was informed her probation was being extended in August 2016, during an evaluation meeting. On Alvarado's next Performance Appraisal, Alvarado's "Anniversary Date" was changed from May 18 to August 9, 2016. Her performance appraisal rated Alvarado as meeting standards and included both positive and negative comments. For

example, the comments included:

> Erica, you set high standards for yourself and strive to be the best at whatever you do. You are persistent and diligent in your approach towards task completion and attainment of goals. When a mistake is made, you are quick to try and correct the error. You ask appropriate questions in an effort to better understand the issue in order to prevent repeating the mistake. . . In addition to the high expectations you have for yourself, you expect others to perform at an equally high level as well. You can become frustrated and impatient when things aren't done to your standards consistently. It is recommended that you practice regular introspection, meaning always look at your self first before providing an opinion that could be construed as negative especially with situations you do not agree with.
>
> Erica, you have demonstrated the ability to communicate well verbally as well as in writing. . . When in the public, you conduct yourself in a professional manner even when faced with a contentious customer or adversarial situation. You are very good about asking questions and verifying information but you are not always receptive to accepting differing viewpoints or constructive criticism as previously mentioned. You could benefit from listening others, gathering all the facts and processing information throughly [sic] before proceeding to act. You must learn to be gracious even when you're irritated. In order to do so you must acknowledge and display self awareness, self management, social awareness and relationship management. As with all skills they can be improved. . . . Please remember relationship management begins and ends with communication that is positive, inspiring and influential. Your peers first look to you for that motivating message and they deserve it.
>
> Erica, you has [sic] a firm understanding of policies and procedures and you have the ability to follow instructions. Upon receiving a directive you disagree with, you must ensure you take the appropriate steps and follow the chain of command in your attempts to state your position or rectify the situation. An established chain of command creates efficiency and accountability. Ignoring the chain of command is unacceptable and interrupts District operations. In the future, I would encourage you to work through me, your supervisor, to assist in answering your questions and providing solutions to your concerns.

DSOF, Ex. 17 (Doc. 58-7).

On August 11, 2016, Garcia wrote a memo to Aguilar indicating that Alvarado had successfully completed all of the requirements for the position during her probationary year and requested she be placed into the position of Fire Inspector Apprentice, effective August 9, 2016.

On June 16, 2017, when Alvarado asked Douglas if there was any way for her to get off probation or promoted like her male peers, Alvarado was told she needed to ask Garcia. On June 27, 2017, Douglas met with Garcia and relayed the inquiry from Alvarado. When Douglas explained that Alvarado had learned that her male peers had gotten off probation and been promoted prior to their anniversary dates and was asking for the same consideration

- 3 -

and opined that it would be a fair treatment, Garcia said that "fairness is subjective" and denied the request. Alvarado Dec., ¶ 7 (PSOF, Ex. 4, Doc. 66-4).

In the August 1, 2017, Performance Evaluation, Douglas rated Alvarado as "Meets Standards" in every category except Safety in which Alvarado was rated as "Exceeds Standards." Additionally, Alvarado had completed all the required trainings, classes, and certifications, except for a Fire/Arson IV class. Because Alvarado missed the class through no fault of her own, Douglas recommended the District still promote Alvarado to Fire Inspector I. On August 7, 2017, effective August 9, 2017, Alvarado was promoted to Fire Inspector 1, but her Anniversary Date remained as August 9.

The District asserts Alvarado exhibited a disrespectful attitude toward Douglas, including making negative and sarcastic comments, becoming argumentative and defensive, and yelling. Douglas conducted numerous coaching and counseling sessions, but Alvarado refused to accept responsibility for her conduct. Alvarado's insubordination and poor attitude continued and manifested in two areas: her interactions with customers and her interactions with co-workers. Numerous complaints regarding Alvarado were made by customers. However, Douglas did not prepare inspection summaries regarding inspections completed by Alvarado until Douglas was recommending Alvarado be terminated.

On August 11, 2017, Alvarado complained to Douglas and Ian Robinson ("Robinson") that the extension of her probation because of her medical leave and her pregnancy was unfair; she also complained that it was unfair that she was not permitted to take time off to take her kids to school when Garcia was late at least once a week in order to take his daughter to school and he was not penalized. Alvarado continued to complain to Human Resource personnel regarding the extension of her probation and modification of her Anniversary Date.

On August 28, 2017, Alvarado complained to Garcia and Douglas that she had been held back because of her pregnancy and medical leave while Travis Samuelson ("Samuelson") had not been penalized for taking time off for the birth of his child. Alvarado

was provided for the first time a Personnel Change Agreement that stated it was effective June 6, 2016 and that it was allegedly authored on August 29, 2017. This document stated Alvarado had not completed specifically-named training/classes and that the probationary period had been extended "to attend the [] classes if available, and provide ample time to complete on-the-job probationary training . . ." Personnel Change Agreement (DSOF, Ex. 7). However, Douglas testified during her deposition that neither the applicable Position Description or Program Agreement stated such classes were required to be promoted from a recruit. Douglas Dep., p. 51:3-20 (PSOF, Ex. 3, Doc. 66-3).

According to Alvarado, following August of 2017, her work environment became very difficult. On February 28, 2018, Alvarado told Douglas that Douglas was discriminating against her, that Douglas treated her differently than other inspectors and expected things of Alvarado she did not expect of others, and that Douglas treated her poorly and called her out in front of others. Alvarado also threatened to bring in the union because Douglas had been mistreating her. Alvarado asserts that, when Alvarado told Douglas it was not fair that Douglas was willing to work with Samuelson's schedule but not accommodate Alvarado's needs, Douglas became visibly angry.[1] During this meeting, another firefighter remained at the District office after his shift ended because he "did not feel comfortable [l]eaving Deputy Fire Marshal Douglas alone, as the situation seemed as one that may have escalated, and [he] felt that [he] may have been required to step in if it had occurred." Frederick Durham Memo (DSOF, Ex. 22, Doc. 58-8). After this meeting, Douglas decided to terminate Alvarado because she felt Alvarado was insubordinate to her.

Douglas reported Alvarado's conduct to the District's Human Services Department and the Fire Marshal. Consistent with the District's policies, the District placed Alvarado

---

[1] At one point Douglas snapped at Alvarado; Douglas apologized for snapping at Alvarado during this meeting.

on administrative leave with pay while it investigated the incident.[2] The District gathered witness statements, which supported Douglas's report. On March 12, 2018, the Fire Chief issued a Notice of Intent to Terminate Alvarado's employment. The reasons stated in the Notice were the February 2018 incident, a similar incident from January 2017 when Alvarado yelled at Douglas, customer complaints, Alvarado's refusal to change her conduct and attitude after numerous formal and informal training and coaching sessions, and Alvarado's violations of the District's policies. After Alvarado disputed the allegations in the Notice, Garcia considered all the information and terminated Alvarado's employment, effective March 14, 2018. Alvarado appealed the termination to the Board of Appeals, but failed to attend the appeal hearing. The Board of Appeals nonetheless reviewed the evidence and, on March 26, 2018, upheld the Fire Chief's decision to terminate Alvarado.

Samuelson was hired on the same day and in the same position as Alvarado. Alvarado learned that Samuelson had been promoted to Fire Inspector Apprentice on Monday, May 16, 2016, two days before his one-year anniversary date of May 18, 2016. This date was the beginning of a new pay period for the District. Garcia testified at his deposition that Samuelson was promoted to Fire Inspector Apprentice two days before his anniversary date and stated the decision to promote him would have been made on the recommendation of Douglas, who was Samuelson's supervisor. Samuelson's Personnel Change Notice shows that he was promoted to Fire Inspector 1, effective February 20, 2017, with a retroactive promotion date and pay from January 23, 2017, notwithstanding the fact that his 12-month probation in the position of Fire Inspector had only begun on May 16, 2016. Neither Garcia, nor Aguilar, both of whom signed the Personnel Change Notice for Samuelson in 2017, could explain why Samuelson was again promoted early, but both agreed it would have been recommended by his supervisor.

Additionally, Samuelson also took time off with respect to the birth of his child.

---

[2]Garcia testified that he did not take any steps to investigate whether Alvarado was being discriminated against. Garcia dep., p. 51:8-16 (PSOF, Ex. 2, Doc. 66-2).

However, he did not take an extended leave of absence during his initial probationary period.

Michael Ross ("Ross") was hired at a higher rank than Alvarado; he entered the Fire Inspector program as an Apprentice (Level 2) on May 18, 2015. Ross was promoted to Fire Inspector (Level 3) on November 28, 2016, over 18 months after he started in the program. Ross did not take an extended leave of absence during his probationary period.

Douglas took approximately six weeks of paid time off with respect to personal medical issues. Her Anniversary Date was not changed because of this leave.

Pursuant to the District's Probationary Employees Policy, new employees are placed on probation for one year "to allow sufficient time for the District to thoroughly evaluate an employee's performance." Probationary Employees Policy ("Policy") (DSOF, Ex. 4, Doc. 58-1). Alvarado asserts the Policy was not uniformly applied.

Alvarado filed a Complaint on April 2, 2019, alleging claims for violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, and for retaliation in violation of the FMLA. The District has filed a Motion for Summary Judgment (Doc. 57); Alvarado has filed a response (Doc. 65) and the District has filed a reply (Doc. 67).

II. *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue

for trial." *Id.*, 477 U.S. at 248 (internal quotes omitted); *see also Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992) (cannot rely on the allegations of the pleadings, or upon conclusory allegations in affidavits). The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d 626, 631 (9th Cir. 1987).

Summary judgment is not to be "too readily" granted in employee discrimination cases because of "the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv.*

*Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Indeed, "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000), *quoting Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). However, even in employment cases, "deference to the non-moving party does have some limit." *Jernigan v. Alderwoods Grp., Inc.*, 489 F. Supp. 2d 1180, 1187 (D. Or. 2007); *see e.g. Nelson v. Boeing Co.*, No. 19-35401, 2020 WL 3076243, at *1 (9th Cir. June 10, 2020) (summary judgment properly granted on hostile work environment claim because plaintiff failed to raise a genuine dispute of material fact as to whether defendant's alleged conduct was based on his gender or that defendant's conduct was sufficiently severe or pervasive to alter the conditions of his employment); *Denning v. Cty. of Washoe*, 799 F. App'x 547, 548 (9th Cir. 2020) (finding summary judgment was properly granted because "isolated offensive remarks" and instances of "unfair treatment" are insufficient to support a hostile work environment claim"); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("Viewing the evidence in the light most favorable to Manatt, we conclude that the conduct of Manatt's co-workers and supervisor—while offensive and inappropriate—did not so pollute the workplace that it altered the conditions of her employment. Her hostile work environment discrimination claim must therefore fail."); *Pearson v. Reynolds Sch. Dist. No. 7*, 998 F. Supp. 2d 1004, 1022 (D. Or. 2014) (granting summary judgment on Title VII disparate treatment claim where plaintiff failed to establish prima facie case).

Additionally, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken). Moreover,

"at the summary judgment stage, courts do not focus on the admissibility of the evidence's form. [Courts] instead focus on the admissibility of its contents." *Marceau v. International Broth. of Elec. Workers*, 618 F.Supp.2d 1127, 1141-42 (D.Ariz. 2009).

A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *Varig Airlines*, 690 F.2d at 1238. Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991). Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007), *citation omitted*. Moreover, statements must allege personal knowledge. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) ("Like affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment."); *see also Block v. Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975), *quoting Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969) ("[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). Additionally, the court is to review the record as a whole, but must disregard evidence favorable to the moving party that the jury is not required to believe and must give credence to the uncontradicted and unimpeached evidence of the moving party, at least "'to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51, 120 S.Ct. 2097, 2110 (2000), *citation omitted*.

The Court recognizes the parties have disputed facts as stated by the opposing party. The Court will only consider the admissible evidence that is supported by specific facts that may show a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510 (1986).

III. *Timeliness of the EEOC Charge of Discrimination*

In its reply, the District argues Alvarado's claims related to the extension of her initial probationary period are time-barred. However, as stated by another district court:

> [T]o the extent that plaintiff attempts to raise new arguments concerning the record evidence for the first time in her reply brief, such issues are waived. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir.2006) ("[A]rguments not raised by a party in its opening brief are deemed waived."); *Cedano–Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Assoc. of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D.Cal.2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

*Williams-Carter v. Comm'r of Soc. Sec.*, No. 2:13-CV-1744-KJN PS, 2015 WL 367494, at *4 (E.D. Cal. Jan. 27, 2015). The Court finds the District has waived this defense.

Indeed, a timeliness issue may be waived. A plaintiff must "file a charge with the EEOC within 180 days of the last act of alleged discrimination," unless a state or local agency enforces a law that prohibits employment discrimination on the same basis, in which case the plaintiff must file an EEOC charge within 300 days of the last act of alleged discrimination. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir.2000). The Arizona Civil Rights Division enforces a law prohibiting employment discrimination; accordingly, the 300–day time limit in Title VII applies to Alvarado's claims. See 42 U.S.C § 2000e–5(e)(1); 42 U.S.C. § 12117(a) (incorporating the enforcement procedures set forth at 42 U.S.C. § 2000e–5). However, this requirement, "like a statute of limitations," may be waived. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *see also Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007). For example, the Ninth Circuit has determined that where a defendant was silent on the statute of limitations until the filing of a reply to the response of a motion to dismiss, the defense may have been waived. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 771 (9th Cir. 1997).

Additionally, the extension of Alvarado's initial probationary period is "inextricably intertwined" with the subsequent actions taken by the District. *See e.g., Miller v. Zinke for*

*Dep't of Interior*, 324 F. Supp. 3d 1032, 1041 (D. Alaska 2018) (noting that where employer's subsequent actions were inextricably intertwined with earlier actions, employer waived reliance on timeliness argument). "As the Supreme Court explained, pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (*quoting Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). Evidence has been presented that the subsequent events and allegations of discrimination grew out of the original claim of discrimination and evidence has been presented that Alvarado was subject to an ongoing pattern of discrimination. The Court finds summary judgment in favor of the District regarding the extension of the initial probationary period is not appropriate.

IV. *Violation of Pregnancy Discrimination Act*

"Title VII prohibits ... intentional discrimination (known as "disparate treatment")[.]" *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The 1978 Pregnancy Discrimination Act amended Title VII to make clear that the prohibition against sex discrimination includes discrimination based on pregnancy. The Act also says that employers must treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

"To establish disparate treatment under Title VII, a plaintiff 'must offer evidence that "gives rise to an inference of unlawful discrimination," either through the framework set forth in *McDonnell Douglas Corp. v. Green* or with direct or circumstantial evidence of

discriminatory intent." *Freyd v. Univ. of Oregon*, — F.3d —, No. 19-35428, 2021 WL 958217, at *13 (9th Cir. Mar. 15, 2021), *citations omitted*; *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (courts analyze Title VII disparate treatment claims through the burden-shifting framework of *McDonnell Douglas*. "[A]though the *McDonnell Douglas* burden shifting framework is a useful 'tool to assist plaintiffs at the summary judgment stage so that they may reach trial,' 'nothing compels the parties to invoke the *McDonnell Douglas* presumption.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004), *footnote omitted*. "Under *McDonnell Douglas*, to show disparate treatment under Title VII[, a plaintiff] must first establish a prima facie case of discrimination." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002), *citation omitted*.

To establish a *prima facie* case under the Pregnancy Discrimination Act, a plaintiff must show "that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015). "[I]mplicit in the Supreme Court's description of the required elements for a Pregnancy Discrimination Act claim in *Young* is that plaintiff must have suffered an adverse employment action." *Allred v. Home Depot USA, Inc.*, No. 1:17-CV-00483-BLW, 2019 WL 2745731, at *13 (D. Idaho June 28, 2019), *citing Hochberg v. Lincare, Inc.*, 334 F. App'x 831, 832 (9th Cir. 2009) (affirming grant of summary judgment on the basis that plaintiff failed to raise a dispute of material fact related to adverse action)).

"The requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994). "The plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." *Id.*, *citation and quotation marks omitted*); *see also Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 692 (9th Cir.

2017) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."), *citation omitted*. "The evidence may be either direct or circumstantial, and the amount that must be produced in order to create a prima facie case is 'very little.'" *Simpson v. Lear Astronics Corp.*, 59 F.3d 176 (9th Cir. 1995), *citation omitted.*

"The employer may then seek to justify its refusal to accommodate the plaintiff by relying on 'legitimate, nondiscriminatory' reasons for denying her accommodation." *Young*, 135 S. Ct. at 1354, *citation omitted*. In other words, "[i]f the plaintiff establishes a prima facie case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo*, 281 F.3d at 1062.

"If the employer offers an apparently 'legitimate, non-discriminatory' reason for its actions, the plaintiff may in turn show that the employer's proffered reasons are in fact pretextual." *Young*, 135 S. Ct. at 1354. A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). As stated by another district court:

> The plaintiff's burden when attempting to prove pretext is much greater than at the *prima facie* stage. Where an employee attempts to prove pretext with circumstantial evidence, as here, she may do so only by offering "specific" and "substantial" evidence "that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable."

*White v. Marquis Companies I, Inc.*, No. 3:18-CV-00613-YY, 2020 WL 5949244, at *11 (D. Or. June 30, 2020), report and recommendation adopted, No. 3:18-CV-00613-YY, 2020 WL 5947885 (D. Or. Oct. 7, 2020), *citations omitted*. To survive summary judgment, a plaintiff must raise a genuine issue of fact such that "a reasonable factfinder could conclude that the [employer's] decision was motivated at least in part" by discrimination. *Dominguez–Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1041–42 (9th Cir. 2005).

### A. *Caregiver Discrimination*

Alvarado argues that she was discriminated against based on her status as a caregiver. However, the Pregnancy Discrimination Act does not cover such discrimination and Alvarado did not plead a separate claim of sex discrimination under Title VII related to caregiving responsibilities. The Court finds this claim was not adequately pled and is not pending before the Court. To any extent the District seeks summary judgment on this claim, it will be granted.

### B. *Pregnancy Discrimination under Title VII*

Here, the District agrees Alvarado was part of a protected class, was qualified for her position as a fire inspector, and suffered an adverse employment action. The District argues, however, that Alvarado cannot establish a nexus between her pregnancy or sex and the adverse action. Whether two employees are similarly situated is ordinarily a question of fact. *Beck v. United Food & Com. Workers Union Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). In general, individuals are similarly situated when they have similar jobs and display similar conduct. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). The employees' roles need not be identical, but they must be similar in all material respects. *Knight v. Brown*, 797 F. Supp. 2d 1107, 1127 (W.D. Wash. 2011).

Alvarado points to Samuelson and Ross as similarly situated persons. The District points out, however, that neither Samuelson nor Ross took extended leave during their initial probationary periods. In other words, the District was able to fully evaluate their performances within the initial probationary period. This compares to Alvarado who the District was not able fully evaluate during the initial probationary period because she was on leave for part of the time. The District also argues that neither Samuelson nor Ross missed required trainings or failed to obtain required certifications. Additionally, because of his prior experience, Ross began at a higher rank than Alvarado. The District argues, "These differences show that Samuelson and Ross had a different ability to work – due to not being

on leave, attending trainings, obtaining certifications, and having prior experience – than did Alvarado." MSJ (Doc. 57), p. 7.

However, as previously stated, "the requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889. Alvarado has presented sufficient evidence by which a trier of fact could conclude that the District treated other similarly situated persons differently than Alvarado. Additionally, as pointed out by Alvarado, Garcia made the determination to extend Alvarado's probationary status before it was known if and which classes would be missed. This "gives rise to an inference of unlawful discrimination." *Id*.

However, the District has provided legitimate, non-discriminatory reasons for the adverse actions, i.e., the extension of Alvarado's probationary status and her termination (lack of complete training and complaints/insubordination). *See generally*, *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004); *Kwesele v. King Cty.*, No. 2:17-CV-1426-RAJ, 2019 WL 266450, at *12 (W.D. Wash. Jan. 18, 2019), *aff'd*, 804 F. App'x 726 (9th Cir. 2020). The Court, therefore, must consider whether Alvarado has raised a genuine issue of fact such that "a reasonable factfinder could conclude that the [District's] decision was motivated at least in part" by discrimination. *Dominguez–Curry v. Nevada Transp. Dept.*, 424 F.3d at 1041–42. Alvarado "may demonstrate pretext 'either directly by persuading the court that a discriminatory reason likely motivated [the District] or indirectly by showing that [the District's] proffered explanation is unworthy of credence.'" *Maxfield v. Brigham Young Univ. – Idaho*, 27 F. Supp. 3d 1077, 1090 (D. Idaho 2014), *citations omitted*.

Alvarado has presented evidence that Garcia made the decision to extend Alvarado's probationary status before knowing she had not completed certain trainings/classes. Additionally, Douglas did not document Alvarado's issues with customers until March of 2018 when she was recommending Alvarado be terminated. This evidence indirectly shows

the District's proffered explanation may be unworthy of credence. The Court finds material facts are at issue and summary judgment as to Alvarado's claim of pregnancy discrimination is not appropriate.

V.   *Retaliation under Title VII and the FMLA*

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.." 42 U.S.C. § 2000e–3(a). Title VII retaliation claims "require the plaintiff to prove that the employer acted with conscious intent to discriminate." *McDonnell Douglas*, 411 U.S. at 805–06; *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987), *citing Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir.1986)) (The *McDonnell Douglas* framework and allocation of proof that governs disparate treatment claims also governs retaliation claims.). Specifically, a plaintiff must show: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

Again, the District does not dispute that Alvarado engaged in protected activity and that she was subjected to an adverse employment action. The District does, however, assert a causal link between the protected activity and adverse actions cannot be established. The District points out that, after Alvarado received additional training, Alvarado was promoted, received an increase in her compensation, and began a new probationary period; she was again promoted a year later. The District argues the "multiple promotions and compensation increases between her extended probationary period and her termination show that the two events are not connected." MSJ, p. 11. However, Alvarado is not simply arguing the protected activity was the pregnancy and the use of the FMLA, but that the protected activity also included Alvarado's ongoing complaints of discrimination based on her pregnancy and

invocation of her FMLA rights. Indeed, the February 2018 incident between Alvarado and Douglas included complaints and claims of discrimination from Alvarado. It was approximately two weeks after this meeting that Garcia issued the Notice of Intent to Terminate Alvarado. Where temporal proximity is "very close," that proximity itself may be sufficient evidence of causality. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Indeed, courts in this circuit have "required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Mahoe v. Operating Eng'rs Local Union No. 3*, No. CIV. 13-00186 HG-BMK, 2014 WL 6685812, at *8 (D. Haw. Nov. 25, 2014), *citing Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)); *see Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (two months sufficient); *Serlin v. Alexander Dawson Sch., LLC*, 656 F. App'x 853, 856 (9th Cir. 2016) (three months too long); *Brown v. Dep't of Public Safety*, 446 Fed. App'x. 70, 73 (9th Cir. 2011) (five months too long); *Pickens v. Astrue*, 252 F. App'x 795, 797 n.2 (9th Cir. 2007) (same); *Vasquez v. County of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003) (thirteen months too long).

In this case, evidence has been presented that Metzger advised Aguilar via email that Alvarado had applied for medical and FMLA leave for the birth of her child. Aguilar's response indicated that Garcia would extend Alvarado's probation by the length of time Alvarado was out. In other words, Garcia knew the requested leave included leave pursuant to the FMLA. Additionally, his decision was made prior to knowing what, if any, training, Alvarado missed. This raises the specter that the District's proffered explanation is not worthy of credence. Moreover, in her March 2, 2018, memo to Aguilar, Alvarado again stated that she felt discriminated against and that she was being treated differently. Less than two weeks after this claim of discrimination, the Notice of Intent to Terminate Alvarado was issued. Further, Garcia testified that he did not take any steps to investigate whether Alvarado was being discriminated against. The Court finds a causal link between the protected activity and adverse action have been shown; a *prima facie* case for retaliation

under Title VII and the FMLA has been established.

However, the District has provided legitimate, non-discriminatory reasons for the adverse actions. Nonetheless, Alvarado has raised a genuine issue of fact such that "a reasonable factfinder could conclude that the [District's] decision was motivated at least in part" by discrimination. *Dominguez–Curry v. Nevada Transp. Dept.*, 424 F.3d at 1041–42. Alvarado "may demonstrate pretext 'either directly by persuading the court that a discriminatory reason likely motivated [the District] or indirectly by showing that [the District's] proffered explanation is unworthy of credence.'" *Maxfield v. Brigham Young Univ. – Idaho*, 27 F. Supp. 3d 1077, 1090 (D. Idaho 2014), *citations omitted*.

Alvarado has presented evidence that Garcia had reason to know Alvarado's requested leave included leave under the FMLA, but made the decision to extend Alvarado's probationary status before knowing she had not completed certain trainings/classes. Additionally, Douglas did not document Alvarado's issues with customers until March of 2018 when she was recommending Alvarado be terminated. This evidence indirectly shows the District's proffered explanation may be unworthy of credence. The Court finds material facts are at issue and summary judgment as to Alvarado's claims of retaliation under Title VII and the FMLA is not appropriate.

Accordingly, IT IS ORDERED:

1. The Motion for Summary Judgment (Doc. 57) is DENIED.

2. The parties shall file a Joint Proposed Pretrial Order/Statement within 40 days of the date of this Order. *See* Scheduling Order (Doc. 14).

DATED this 27th day of April, 2021.

_____
Cindy K. Jorgenson
United States District Judge